**DEPARTMENT OF CORRECTIONS, Petitioner,**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (McCLELLAN), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 2002.
Decided March 25, 2002.

Harry W. Rosensteel, Pittsburgh, for petitioner.

Cynthia M. Porta, Pittsburgh, for respondent.

Before McGINLEY, Judge, SIMPSON, Judge, and McCLOSKEY, Senior Judge.

McCLOSKEY, Senior Judge.

The Department of Corrections (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), affirming an order of the Workers' Compensation Judge (WCJ), approving a compromise and release agreement

(C & R) between Employer and Kelland McClellan (Claimant). We affirm.

The facts of this case are unique. Claimant originally sustained an injury to his back in the course and scope of his employment on March 31, 1996. Employer thereafter issued a notice of compensation payable, describing Claimant's injury as a "lumbosacral strain." Initially, Claimant received his gross salary in lieu of workers' compensation benefits pursuant to what is commonly referred to as the Heart and Lung Act.[1] Those benefits were terminated, however, following a determination that Claimant's disability was permanent in nature. Thereafter, Claimant received total disability workers' compensation benefits. In June of 1999, Claimant, through his counsel, negotiated a proposed settlement with Employer's workers' compensation insurance carrier to resolve his claim in exchange for a lump sum payment of $75,000.00. Claimant subsequently filed a petition to seek approval of a C & R.

In the meantime, Claimant had apparently relocated to the state of Georgia. At a hearing on August 24, 1999, Claimant requested to be permitted to testify via telephone from Georgia. Employer did not object to this request. The WCJ approved Claimant's request and a second hearing was scheduled and held on September 22, 1999. At this second hearing, Claimant testified from a hospital room in Georgia as to his understanding of the proposed C & R, including his loss of entitlement to future wage loss and medical benefits.[2] Claimant also indicated that he signed the agreement in front of two witnesses, his sister Avona Smith and another person by the name of Michael Irwin, both of whom also signed the same.

On cross-examination, counsel for Employer asked Claimant two simple questions, the first relating to his understanding of waiver of any future workers' compensation or Heart and Lung Act benefits and the second relating to an August 24, 1999, resignation letter signed by Claimant. The WCJ then stated that he "will be approving the [C & R]. And hopefully an order should go out sometime later this week." (R.R. at 16a).

On the way out of the hearing room, Employer alleged that counsel for Claimant first informed them that Claimant's medical condition was "terminal."[3] The next morning, September 23, 1999, counsel for Employer delivered a letter to the WCJ and Claimant's counsel, requesting that the record remain open in light of this after-discovered information. Counsel for Claimant then advised Employer's counsel that Claimant had in fact passed away in the evening hours of September 22, 1999, several hours after the hearing of that day. Employer requested a hearing or conference before the WCJ. A conference call was held later that afternoon, at which time the WCJ informed the parties that an order approving the C & R had already been signed and circulated at 7:45 a.m. that morning. Employer then filed an appeal with the Board but the Board af-

---

1. Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–638.

2. Claimant was hospitalized as a result of a non-work-related heart condition.

3. Counsel for Claimant alleged that the WCJ and Employer's counsel were informed that Claimant was hospitalized in Georgia for his heart condition prior to going on the record at this second hearing. After said hearing, counsel for Claimant acknowledged being asked about Claimant's condition by Employer's counsel, to which she replied that she had no personal knowledge as to the status of Claimant's health but that he was healthy and living with his sister the last time she spoke to him.

firmed. Employer thereafter filed a petition for review with this Court.

■ On appeal,[4] Employer argues that the WCJ and Board erred as a matter of law in approving the C & R despite the fact that Claimant died before the WCJ's written order was issued. We disagree.

Section 449 of the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended, added by* Act of June 24, 1996, P.L. 350, 77 P.S. § 1000.5, addresses the procedure for filing of C & R's. Specifically, Section 449(b) provides as follows:

> (b) Upon or after filing a petition, the employer or insurer may submit the proposed compromise and release by stipulation signed by both parties to the [WCJ] for approval. The [WCJ] shall consider the petition and the proposed agreement in open hearing and shall render a decision. The [WCJ] shall not approve any compromise and release agreement unless he first determines that the claimant understands the full legal significance of the agreement. . . .

77 P.S. § 1000.5(b).

In support of its argument, Employer relies upon our prior decisions in *Blessing v. Workers' Compensation Appeal Board (Heintz Corporation)*, 737 A.2d 820 (Pa. Cmwlth.1999), *petition for allowance of appeal denied*, 561 Pa. 701, 751 A.2d 193 (2000) and *Strawbridge & Clothier v. Workers' Compensation Appeal Board (McGee)*, 777 A.2d 1194 (Pa.Cmwlth.2001)

for support. In *Blessing*, we cited to the requirements of Section 449(b) of the Act and held that a C & R submitted by a claimant and only signed by him but not employer or employer's insurer failed to comport with these requirements.

In *Strawbridge & Clothier*, we were called upon to examine the requirements of a "final order" from a WCJ. In that case, following a C & R hearing before a WCJ, the WCJ issued a bench order approving the same. Before the WCJ issued a final decision and order, claimant, who was *pro se*, wrote the WCJ stating that she did not understand the C & R and had reconsidered.[5] Following a hearing, the WCJ vacated his earlier bench order and dismissed employer's petition for approval of the C & R, thereby reinstating claimant's benefits.

Employer appealed, arguing that the bench order was a "final order," but the Board affirmed. Employer appealed to this Court, but we too affirmed, holding that a bench order was not a "final order" under the Special Rules as it did not constitute a written decision. We noted that under The Special Rules Before Referees (Special Rules), 34 Pa.Code § 131.111, WCJs' are required to issue a written decision and appropriate order and that said decision will be a "final order."[6]

However, the facts of *Blessing* and *Strawbridge & Clothier* are distinguishable

---

4. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth. 436, 550 A.2d 1364 (1988).

5. Upon the advice of the WCJ, the claimant in *Strawbridge & Clothier* had previously decided not to waive her right to appeal the WCJ's decision.

6. Under these Special Rules, the WCJ's written decision must contain "findings of fact, conclusions of law and an appropriate order based upon the entire record." 34 Pa.Code § 131.111(a).

from the unique facts of the present case.[7] In this case, there were neither problems nor disputes concerning the procedural filing of the C & R. Instead, after Claimant filed his petition seeking approval of the C & R, a hearing was held before the WCJ. At this hearing, the WCJ accepted and entered into evidence a duly executed copy of the same.[8] Thereafter, Claimant's counsel proceeded to question him regarding his understanding of the C & R, i.e., the effect of the C & R on his future wage loss and medical benefits. Claimant indicated that he fully understood the effect of the C & R. Moreover, Claimant had previously signed a waiver of his right to appeal the decision of the WCJ in the event that the C & R was approved.

Employer then cross-examined Claimant, simply asking again if he understood that he was losing any entitlement to future workers' compensation benefits.[9] Claimant again indicated that he understood, after which the WCJ, obviously satisfied that Claimant understood the nature of the C & R, indicated that he would "be approving the [C & R]." (R.R. at 16a). Unbeknownst to the WCJ, Claimant had passed away several hours after this hearing. Early the very next morning, as he promised, the WCJ signed and circulated a written decision and order approving the C & R.[10]

As the parties here complied with both the procedural and substantive requirements of Section 449 of the Act, we cannot say that WCJ and Board erred as a matter of law in approving the C & R.[11]

■ Next, Employer argues that the Board abused its discretion in failing to hold a hearing *de novo* or to remand the case to the WCJ for rehearing based upon Claimant's counsel's alleged material misrepresentations to Employer regarding his health. Again, we disagree.

■ Section 425 of the Act addresses hearings *de novo* and rehearings and provides, in pertinent part, as follows:

> If on appeal it appears that the [WCJ's] award or disallowance of compensation was capricious or caused by fraud, coercion, or other improper conduct by any party in interest, the board may, grant a hearing de novo before the board, or one or more of its members or remand the case for rehearing to any [WCJ].

77 P.S. § 856. Moreover, the grant or denial of a rehearing is left to the discretion of the board and this Court will not disturb that decision absent a clear abuse of discretion. *UGI Corporation v. Workmen's Compensation Appeal Board (Wagner)*, 130 Pa.Cmwlth. 42, 566 A.2d 1264 (1989).

---

7. The facts of this case are also distinguishable from *Lebid v. Workers' Compensation Appeal Board (County of Chester)*, 771 A.2d 79 (Pa.Cmwlth.2001), wherein we refused to enforce an unsigned, verbal C & R agreement under the provisions of Section 449 of the Act.

8. At this hearing, the WCJ simply indicated that he had been "handed a copy" of the C & R and that he was admitting it as "Bureau Exhibit Number One." (R.R. at 9a).

9. Employer did ask Claimant one other question regarding his signature on a resignation letter.

10. Admittedly, at some later point, the WCJ learned of Claimant's passing and Employer delivered a letter to the WCJ and Claimant's counsel requesting that the record remain open. However, by that time, the WCJ's decision and order were already in circulation.

11. In rendering this decision, we keep in mind that the Act is remedial in nature and intended to be liberally construed in favor of an injured employee, i.e., to effectuate its humanitarian purpose. *See Hoffman v. Workers' Compensation Appeal Board (Westmoreland Hospital)*, 559 Pa. 655, 741 A.2d 1286 (1999).

{

The record in this case lacks any evidence of fraud or concealment on Claimant's part as to the severity of his physical condition. To the contrary, the evidence of record indicates that Employer was aware that Claimant suffered from a non-work-related heart condition as early as 1998. More specifically, at a Heart and Lung Act hearing held on April 8, 1998, there was much discussion between counsel for Employer and Claimant regarding this condition.[12] *See* R.R. at 44a–56a. In fact, Claimant testified at this hearing via telephone because his heart condition prevented him from attending in person. (R.R. at 55a–56a).

At the September 22, 1999, C & R hearing, Claimant again testified via telephone. At the very least, we agree with the Board that such a fact should have raised a "red flag" on the part of Employer. (Board's Decision, May 14, 2001, p. 6). Moreover, on cross-examination at this hearing, Employer had every opportunity to question Claimant regarding his physical condition and why he was testifying via telephone, but failed to do so. Thus, we cannot say that the Board abused its discretion in failing to hold a hearing *de novo* or to remand the case to the WCJ for rehearing as to have done so would undoubtedly have given Employer the proverbial second bite at the apple.

Accordingly, the order of the Board is affirmed.[13]

### ORDER

AND NOW, this 25th day of March, 2002, the order of the Workers' Compensation Appeal Board is affirmed.

---

12. Although Claimant indicated at this hearing that his heart condition was "getting better" and that his heart had "improved," Claimant further indicated that he takes several types of medications for his condition to keep his heart "beating at a normal rhythm," that he has taken such medications since 1996 and that he was on a heart monitor at the time of the hearing because his heart "went into irregular rhythm." (R.R. at 47a, 49a, 53a–56a).

13. We note that Claimant raises an additional issue in his brief to this Court concerning the alleged improper execution of the C & R by Claimant. However, Claimant failed to object to the C & R or raise any issue concerning improper execution before the WCJ. The law is well settled that issues not raised before the WCJ are waived and will not be considered by this Court. *Rite Aid Corporation v. Workers' Compensation Appeal Board (Bennett)*, 709 A.2d 447 (Pa.Cmwlth.1998), *petition for allowance of appeal denied,* —— Pa. ——, 796 A.2d 988 (1999).